GEORGE I. RICHE *vs.* BAR HARBOR WATER COMPANY.

Hancock. Opinion April 6, 1883.

*Eminent domain. Public use. Notice. Constitutional law. Trespass.*

To constitute a public use authorizing the exercise of the right of eminent domain, it is not required that the entire community, or even a considerable portion of it should directly participate in the benefits to be derived from the property taken.

A notice dated April 4th, but first published in a newspaper, April 7th, takes effect from the date of its publication.

The charter of a water company authorized it to take land for its use and provided that it " shall cause surveys to be made for the purpose of locating their dams, reservoirs and pipes and other fixtures, and cause accurate plans of such location to be filed in the office of the town clerk; . . . and notice of such location shall be given to all persons affected thereby, by publication in some public newspaper." The company gave notice in a newspaper that, " for the purpose of erecting thereon a reservoir or reservoirs, and such other works as they deem necessary," they had " caused a survey of a certain lot of land to be made, and the plan thereof to be filed in the office of the town clerk. . . This land is situated upon the hill known as Cunningham's Hill (at Bar Harbor), and was formerly owned or supposed to be by A. P. Cunningham or others. For further particulars, interested parties are referred to the plan in the office of town clerk."

*Held,* that the notice was a sufficient compliance with the charter.

The clause in the constitution prohibiting the taking of private property for public uses without compensation, does not prohibit the legislature from

authorizing an exclusive occupation of private property, temporarily as an incipient proceeding to the acquisition of a title to, or an easement in the land taken.

The mode and manner in which the owner of land taken for public use is to be compensated for the land so taken, are to be determined by the legislature.

When it is not required that compensation be made before entering upon the land taken, and it is provided that the owner of the land may cause his damages to be ascertained in the same manner as land taken for highways, such owner cannot maintain trespass for such taking, within the time limited for an assessment of damages, and without any application for such assessment.

On report.

Trespass for entering plaintiff's premises between May 1, 1881, and the date of the writ, and erecting a reservoir and laying down water pipes.

The writ was dated September 9, 1881. The plea was general issue, and brief statement justifying the acts complained of under their charter, which read as follows :

" An act to incorporate the Bar Harbor Water Company. Be it enacted by the senate and house of representatives in legislature, assembled as follows :

" Section 1. David Rodick, Stephen Higgins, Fountain Rodick, Samuel N. Higgins, Charles Higgins, Albert F. Higgins, John A. Serenus Rodick, H. Rodick, Alfred E. Conners and Edwin G. Desisle, with their associates and successors, are hereby made a corporation by the name of the Bar Harbor Water Company, for the purpose of conveying to and supplying the village and vicinity of Bar Harbor, in the town of Eden, Hancock county, with pure and wholesome water, and said corporation, for said purposes may hold real and personal estate, necessary and convenient therefor, not exceeding in amount fifty thousand dollars.

" Section 2. Said corporation is hereby authorized, for the purposes aforesaid, to take, detain and use the water of Eagle Lake, Duck Brook, or either of them, in said town of Eden, and is also authorized to erect, maintain dams and reservoirs and lay and maintain pipes and aqueducts, necessary for the proper accumulating, conducting, discharging, distributing and disposing of water and forming proper reservoirs thereof; and said

corporation may take and hold any lands necessary therefor, and may excavate through any lands where necessary for the purpose of this incorporation.

"Section 3. Said corporation shall be held liable to pay all damages that shall be sustained by any persons by the taking of any land or other property, or by flowage, or by excavating through any land, for the purpose of laying down pipes and aqueducts, building dams and reservoirs, and also damages for any other injuries resulting from said acts ; and if any person sustaining damage, as aforesaid, and said corporation shall not mutually agree upon the sum to be paid therefor, such person may cause his damages to be ascertained in the same manner and under the same conditions, restrictions and limitations as are by law prescribed in the case of damages by the laying out of highways.

"Section 4. Said corporation is hereby authorized to lay down, in and through the streets and ways in said town of Eden, all such pipes, aqueducts and fixtures as may be necessary for the purposes of their incorporation, under such reasonable restrictions as the selectmen of said Eden may impose. And said corporation shall be responsible for all damages to persons and property occasioned by the use of such streets and ways, and shall further be liable to pay to said town of Eden, all sums recovered against said town for damages from obstructions caused by said corporation, and for all expenses, including reasonable counsel fees, incurred in defeating such suits, with interest on the same.

"Section 5. Said corporation shall have power to cross any private or public sewer, or to change the direction thereof, where necessary for the purposes of their incorporation, but in such manner as not to obstruct or impair the use thereof; and said corporation shall be liable for any injury caused thereby.

"Section 6. Said corporation shall cause surveys to be made for the purpose of locating their dams, reservoirs and pipes and other fixtures, and cause accurate plans of such location to be filed in the office of the town clerk of said Eden, and notice of such location shall be given to all persons affected thereby, by publication in some public newspaper, in said county ; and no

·entry shall be made upon any lands, except to . make surveys, until the expiration of ten days from the said filing and publication.

"Section 7. Any person who shall wilfully injure any of the property of said corporation, or who shall knowingly corrupt the waters of said Eagle Lake and Duck Brook, or any of their tributaries, in any manner whatever, or render them impure, whether the same be frozen or not, shall be punished by a fine not exceeding one thousand dollars, or by imprisonment not less than one year, and shall be liable to said corporation for three· times the actual damage, to be recovered in any proper action.

"Section 8. The capital stock of said corporation shall be five thousand dollars, which may be increased to fifty thousand dollars by a vote of said corporation ; and said stock shall be divided in shares of fifty dollars each.

"Section 9. The town of Eden is hereby authorized to subscribe to the stock of said corporation to an extent not exceeding two thousand dollars, by a two-thirds vote, at any legal meeting called for that purpose, but no more than one meeting shall be called for that purpose in any one year.

"Section 10. The first meeting of said corporation may be called by a written notice thereof, signed by any two corporators herein named, served upon each corporator by giving him the same in hand or leaving the same at his last, usual place of abode, seven days before the time of meeting.

"Section 11. This act shall take effect when approved.

"Approved February 10, 1874."

Notice of location, dated April 4, 1881, was published in Ellsworth American, April 7, and April 14, 1881, as follows :

"State of Maine, Hancock county, Eden, April 4, 1881.

"Notice is hereby given that the Bar Harbor Water Company, (for the purpose of erecting thereon a reservoir or reservoirs, and such other works as they may deem necessary), caused a survey of a certain lot of land to be made, and the plan thereof to be· filed in the office of the town clerk of Eden, as by law required.

"This land is situated upon the hill known as Cunningham's .Hill, (at Bar Harbor) and was formerly owned, or supposed to be

owned, by A. P. Cunningham or others. For further particulars interested parties are referred to the plan in the office of the town clerk in Eden.          Bar Harbor Water Company."

Other material facts stated in the opinion.

*Hale and Emery*, for the plaintiff.

The company had authority under their charter to take lands for dams, for reservoirs, for pipes, and for aqueducts — these four, and no more. In order to secure the right they must " cause surveys to be made for the purpose of locating their dams," &c. and make plans and give notice. This was clearly to give notice to the land owner. The survey was to be specific and for a single object, whether dam, reservoir, pipe or aqueduct. It was not to be general, and the company to build dams, reservoirs, pipes and aqueducts *ad libitum*, within the lines. The plan was to be accurate, specific and not general, so that the owner might know just how much and what land was taken, and for what purpose. He might not object to a pipe but might object to a reservoir.

The notice must be equally specific. It must be a " notice of such location." It must disclose the place where, and especially the particular purpose. *Spofford* v. *B. & B. R. R. Co.* 66 Maine, 26.

The statute does not say, " notice that a survey had been made," " notice of plan," but " notice of such location." The notice was to be a sort of a return, a publication of all the facts.

The notice given does not state what nor whose land was taken, nor for what purpose. It says : " for the purpose of erecting thereon a reservoir or reservoirs, and such other works as they deem necessary." It is not confined to the purposes for which they were authorized to take land, nor for such works as were really necessary, but all the works that the company might deem necessary. This is a very cavalier way of disposing of private rights. *Glover* v. *Boston*, 14 Gray, 282; *Wilson* v. *Lynn*, 119 Mass. 174; *W. P. Co.* v. *Allen*, 120 Mass. 352; Lewiston Case, 30 Maine, 19; *P. S. & P. R. R. Co.* v. *Co. Com.* 65 Maine, 292; *Hazen* v. *B. & M. R. R. Co.* 2 Gray, 574; *Pinkerton* v. *B. & A. R. R. Co.* 109 Mass. 527; *Kohlhepp* v.

*W. Roxbury*, 120 Mass. 596; *Lund* v. *New Bedford*, 121 Mass. 286; *Drury* v. *R. R. Co.* 127 Mass, 571.

Counsel further ably argued other questions presented by the case, citing: Pierce on Railroads, 254, 163; *Jeffries* v. *Swampscott*, 105 Mass. 535.

To the point that authority was not well given by the charter to take land, counsel cited: *Perry* v. *Wilson*, 7 Mass. 395; *Thacher* v. *Bridge Co.* 18 Pick. 501; *Lowell R. R.* v. *Salem*, 2 Gray, 35; *Haverhill Bridge* v. *Co. Com'rs*, 103 Mass. 120; *Conn. River R. R. Co.* v. *Co. Com'rs*, 127 Mass. 50; *Cushman* v. *Smith*, 34 Maine, 247; *Lee* v. *Pembroke*, 57 Maine, 488; *Sanborn* v. *Belden*, 51 Cal. 266; *Vilhac* v. *Stockton & Ione R. R. Co.* 53 Cal. 208; *Bohlman* v. *Green Bay*, 30 Wis. 105; *Hooker* v. *New Haven & North Hampton Co.* 14 Conn. 146; *Ash* v. *Cummings*, 50 N. H. 591; Cooley's Const. Lim. 562.

*A. P. Wiswell*, for the defendants, cited: *Stewart* v. *Polk Co.* 1 Am. R. (27 Iowa) 238; Cooley's Const. Lim. 182, 532, 560; Field on Corp. §§ 441, 479; *Haverhill Bridge Co.* v. *Co. Com'rs*, 103 Mass. 120; *Railroad Co.* v. *Turner*, 31 Ark. 494 (25 Am. R. 564); *Cushman* v. *Smith*, 34 Maine, 247; *Nichols* v. *R. R. Co.* 43 Maine, 356; *Davis* v. *Russell*, 47 Maine, 443; *Perkins* v. *R. R. Co.* 72 Maine, 95.

APPLETON, C. J. There is nothing better settled than the power of the legislature to exercise the right of eminent domain, for purposes of public utility. This may be done through the agency of private corporations, although for private profit when the public is thereby to be benefitted. It is upon this principle that private corporations have been authorized to take private property, for the purpose of making public highways, railroads, canals, erecting wharves and basins, establishing ferries, &c. The use being public, the determination of the legislature that the necessity, which requires private property to be taken, exists, is conclusive. To constitute a public use, it is not necessary that the entire community, or even a considerable portion of it should directly participate in the benefits to be derived from the purpose for which the property is taken. Accordingly an act incorporat-

ing a company to take springs, lands and rights, for the purpose of supplying a village with pure water, subject to the payment of damages as provided by law, in the case of highways, was held constitutional. So, from considerations affecting the health and comfort of a dense population, private property may be taken for a park or to prevent a nuisance dangerous to the health of the community, and the nuisance be abated. *Talbot* v. *Hudson,* 16 Gray, 417 ; *Lumbard* v. *Stearns,* 4 Cush. 60 ; *Holt* v. *Somerville,* 127 Mass. 408 ; *Bancroft* v. *Cambridge,* 126 Mass. 438.

The property of the plaintiff was taken for public uses. The taking was required by public exigencies. It was taken under and by virtue of an act of the legislature. It remains to be seen whether the defendants have made out a justification under their charter.

1. The notice given was sufficient. It was duly published in the Ellsworth American, under the dates of April 7 and 14, 1881. The plan of the land taken of the plaintiff, shows a survey of the lot in controversy to have been made on the twenty-fifth of the preceding March. The notice recites that the defendant had "caused a survey of a certain lot of land to be made, and the plan thereof to be filed in the office of the town clerk of Eden, as by law required." It goes on to add, that, "the land is situated upon the hill known as Cunningham's Hill, (at Bar Harbor) and was formerly owned, or supposed to be owned, by A. P. Cunningham or others. For further particulars, interested parties are referred to the plan in the office of the town clerk in Eden.                    Bar Harbor Water Company."

It is true this notice is dated April 4. Its publication was on April 7. It was effective as a notice only from that date. But on that date the plan referred to was in the office of the town clerk. Any one interested might then have seen it, and before that date there was no notice. The reference to a plan on file would seem to be sufficient, especially as the plan when filed is particularly designated. *Stone* v. *Cambridge,* 6 Cush. 271. In

*Wilson* v. *Lynn*, 119 Mass. 174, GRAY, C. J., remarks: "If the plan had been referred to it would have been sufficient."

The objection is taken that while the notice states that the survey was made " for the purpose of erecting thereon a reservoir or reservoirs," it is added, "and such other works as they may deem necessary." The purpose is a legitimate one. The other works deemed necessary are those necessary to carry into effect the general object of the corporation. The meaning is obvious. The necessity is what is required for the effectiveness of the reservoir. It matters not to the land owner, whether his land is taken for dams, reservoirs or pipes, nor when a lot is taken, is it requisite that the notice should set forth what specific portion of it is to be used for one purpose and what for another. The corporation will determine on what part of the land taken and necessary, the dams, reservoirs or pipes shall be located as will best subserve the objects they have in view.

2. The description of the land taken is sufficient. It describes the lot as on Cunningham Hill, in the village of Bar Harbor, in the town of Eden, and states that it was formerly owned by Anson P. Cunningham or others. It gives monuments at the corners and the length of line, and the courses by compass. Accompanying this is a plan. A deed adopting this description and placed on record, would be notice to the public. It is not necessary to consider whether or not the description of other lands taken is sufficient. This litigation regards only the rights of this plaintiff.

3. The survey and plan being made for the company, and placed by their agent on file, in the town clerk's office, for public inspection by all parties interested, the certificate of the town clerk thereon, and his testimony of that fact must be deemed sufficient evidence of the due filing of such plan and survey.

4. The defendants entered upon the premises in controversy, under and by virtue of their charter. They made the necessary survey. They gave the required notices. The survey was made, the notice given and the entry and subsequent occupation were under the powers conferred by their charter. It was held in *Cushman* v. *Smith*, 34 Maine, 247, that the " clause in the consti-

tution which prohibits the taking of private property for public use, was not designed to operate, and it does not operate to prohibit the legislature from authorizing an exclusive occupation of private property, temporarily, as an incipient proceeding to the acquisition of a title to it, or to an easement in it." This is precisely what and all that has been done.

But it is urged that compensation should precede the taking, and that no adequate provision is made for compensation.

The constitution, while prohibiting the taking for private property for public uses, does not require that the payment of such compensation should precede its taking. *Cushman* v. *Smith*, 34 Maine, 247; *Nichols* v. *Som. & Ken. R. R. Co.* 43 Maine, 356; *Davis* v. *Russell*, 47 Maine, 443; *Cairo & Fulton R. R. Co.* v. *Turner*, 25 Am. Rep. 564; 31 Ark. 494.

The mode and manner by which the individual, whose property is taken for public use, shall obtain compensation, is to be determined by the legislature. It cannot be determined in any other way. "The legislative power is left entirely free from embarrassment," observes Shepley, C. J., in *Cushman* v. *Smith*, before cited, "in the selection and arrangement of the measures to be adopted to take private property, and appropriate it to public use, and to cause a just compensation therefor."

The provision for compensation is found in section three of the defendants' charter. It is precisely the one afforded where land is for highways and railroads. It is the one uniformly adopted when private property is required by some public exigency. If deemed sufficient in those cases, it must be deemed equally so in others. *Cushman* v. *Smith*. "If," observes English, C. J., in *Cairo & Fulton R. R. Co.* v. *Turner*, 25 Am. Rep. 564, "it be objected that the corporation might not pay the judgment rendered or the award of damages, and it and its securities might be insolvent, and thereby compensation might be defeated; it may be answered that the land owner is not divested of his title, and the right to the easement does not vest in the corporation until the damages awarded are paid; and besides the owner's paramount claim upon the land, chancery, on his timely application, would, as we have seen, restrain the

corporation, by injunction, from the use of the property, until it renders compensation."

5. The alleged trespasses complained of were committed on the first of May, 1881. This suit was commenced on the ninth of September, following. That the plaintiff had knowledge of the defendants' proceedings is evidenced by the institution of this suit. He has made no attempt to obtain compensation in the mode provided by statute. He can yet do it. He cannot maintain trespass within the time in which application may be made for determining the damages for the land taken, and before making such application. *Nichols* v. *Som. & Ken. R. R. Co.* 43 Maine, 356; *Davis* v. *Russell*, 47 Maine, 443. The action is not maintainable.

*Plaintiff nonsuit.*

WALTON, DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.